IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

         V.            :        CRIMINAL NO. 16-481

   ADAM FLANAGAN        :

GOVERNMENT'S SENTENCING MEMORANDUM

I.    INTRODUCTION

The defendant pleaded guilty to Counts Nine and Ten of the Indictment, charging him with violating 18 U.S.C. § 1030(a)(5)(B), intentionally accessing a protected computer without authorization and as a result of such conduct, recklessly causing damage. The government submits this memorandum to the Court to state its position with regard to the sentencing of the defendant.

II.    FACTS

The defendant had worked for Company A as a Radio Frequency Engineer, assisting in the installation of Tower Gateway Basestations (TGBs) – computers that could be mounted on a pole to gather data from residential water meters in the area. The TGB would receive radio signals from residential water meters, permitting billing without sending a meter reader into a home. It also allowed the provider of the water to aggregate data about water usage in the district.

Company A terminated the defendant's employment in the fall of 2013. Over the next few months, he used his knowledge of TGBs, and the failure of some of Company A's customers to change the default password, to log into the TGBs. In two instances that are

relevant to sentencing here, he changed the radio frequency used by the TGB for communication, rendering it inoperable. In a third, he changed the password so that the owner could no longer gain access to it.

## III.   SENTENCING CONSIDERATIONS

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.
> *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006).

The Third Circuit has explained that the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329. *See also United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006) (directing district courts to explain all guideline

2

determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); *United States v. King*, 454 F.3d 187, 196-97 (3d Cir. 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.").[1]

A. The Sentencing Guidelines

The Probation Office has calculated the Sentencing Guidelines as follows:

| GUIDELINE | POINTS |
|---|---|
| Base Offense Level – § 2B1.1 | 6 |
| $95,000> Loss ≥ $40,000 – § 2B1.1(b)(1)(D)[2] | 6 |
| Substantial Disruption of Critical Infrastructure – § 2B1.1(b)(18)(A)(iii) | 6 |
| Abuse of trust/Special Skill – § 3B1.3 | 2 |
| TOTAL | 20 |

The Probation Office then applied § 2B1.1(b)(18)(B), which requires that if the offense involved a substantial disruption of a critical infrastructure under § 2B1.1(b)(18)(A)(iii), the offense level should be increased to Level 24, if it was not already there. Thus, the Probation Office finds that the Offense Level is 24.

The government agrees with the Probation Office's calculations except for the application of § 2B1.1(b)(18)(A)(iii). The government does not believe that this adjustment

---

[1] In *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (*en banc*), the Court held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for re-sentencing.

[2] The parties have reached agreement that this is the appropriate loss range.

applies. However the government does believe that the adjustment in § 2B1.1(b)(18)(A)(i) does apply. Guideline 2B1.1(b)(18)(A) provides as follows:

> (18)(A) (Apply the greatest) If the defendant was convicted of an offense under:
>
>> (i) 18 U.S.C. § 1030, and the offense involved a computer system used to maintain or operate a critical infrastructure, or used by or for a government entity in furtherance of the administration of justice, national defense, or national security, increase by 2 levels.
>>
>> (ii) 18 U.S.C. § 1030(a)(5)(A), increase by 4 levels.
>>
>> (iii) 18 U.S.C. § 1030, and the offense caused a substantial disruption of a critical infrastructure, increase by 6 levels.

Because the defendant has not been convicted of a violation of 18 U.S.C. § 1030(a)(5)(A), subsection (ii) does not apply. Subsection (iii) requires that the offense "caused a substantial disruption of a critical infrastructure." The government agrees that the three water districts involved here are critical infrastructure. Application Note 14 provides in part (emphasis supplied):

> A critical infrastructure may be publicly or privately owned. Examples of critical infrastructures include gas and oil production, storage, and delivery systems, water supply systems, telecommunications networks, electrical power delivery systems, financing and banking systems, emergency services (including medical, police, fire, and rescue services), transportation systems and services (including highways, mass transit, airlines, and airports), and government operations that provide essential services to the public.

Where the government parts company with the Probation Office is over the question whether "the offense caused a substantial disruption of a critical infrastructure." All of the water authorities that were victims here continued to function; the water continued to flow. The consequences of the defendant's actions were that water meter billings were not accurate and in some cases, the authority had to send readers out to look at each customer's meter.

4

When the Sentencing Commission adopted a slightly different version of this Guideline in 2003, it wrote the following:

> The graduated levels ensure incremental punishment for increasingly serious conduct, and were chosen in recognition of the fact that conduct supporting application of a more serious enhancement frequently will encompass behavior relevant to a lesser enhancement as well. Accordingly, the most serious applicable enhancement will apply in any particular case.

> The minimum offense level of level 24 applicable to the third such enhancement was chosen to maintain parity with the minimum offense level that applies to an offense that substantially jeopardized the safety and soundness of a financial institution, substantially endangered the solvency or financial security of a publicly traded company or an organization of at least 1,000 employees, or substantially endangered the solvency or financial security of 100 or more victims. See § 2B1.1(b)(12)(B).

Amendment 654, Appendix C – Volume II to the U.S. Sentencing Guidelines, p. 381.

The Guideline recognizes increasingly serious attacks on critical infrastructure. The lowest level is for instances when "the offense involved a computer system used to maintain or operate a critical infrastructure."§ 2B1.1(b)(18)(A)(i). The next level is when the attack goes beyond a computer used to maintain or operate a critical infrastructure and "cause[s] a substantial disruption of a critical infrastructure." 2B1.1(b)(18)(A)(i). Finally, the Commission recommended a basis for an upward departure when "the disruption to the critical infrastructure(s) is so substantial as to have a debilitating impact on national security, national economic security, national public health or safety, or any combination of those matters." This was contained in § 2B1.1(b)(18)(B), when the Guideline was adopted in 2003. It is now contained in Application Note 20(B).

Given this structure, it seems clear to the government that this defendant's conduct falls at the lowest end of this spectrum. He attacked computers that were used to operate a critical infrastructure, but his conduct did not cause a substantial disruption of that critical

infrastructure. In light of that, the government's view of the Guidelines' calculation is as follows:

| GUIDELINE | POINTS |
|---|---|
| Base Offense Level – § 2B1.1 | 6 |
| $95,000> Loss ≥ $40,000 – § 2B1.1(b)(1)(D) | 6 |
| Offense involved a computer used to maintain or operate a critical infrastructure -- § 2B1.1(b)(18)(A)(i) | 2 |
| Abuse of trust/Special Skill – § 3B1.3 | 2 |
| TOTAL | 16 |

The government agrees that the defendant is entitled to the 3 points for acceptance of responsibility and for saving the government and the court the time and resources that would have been expended to try this case. Thus, the government believes that the Offense Level is 13. Since the defendant has no prior record, the resulting Guideline range is 12-18 months, a range that falls in Zone C.

     B.  Factors Under 18 U.S.C. § 3553(a)

     This Court must also consider all of the sentencing considerations set forth in Section 3553(a). *Gall*, 552 U.S. at 49-50; *United States v. Merced*, 603 F.3d 204, 213 (3d Cir. 2010). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

    1.    Nature and Circumstances of the Offense/ History and Characteristics of the Defendant.

    a)    Nature and Circumstances of the Offense

The defendant's former employer entrusted him with knowledge of the workings of TGBs. The employer gave him information about how to log into TGBs and what the default password was. After he was terminated, instead of leaving quietly, he chose to retaliate against his former employer, using his skills and the knowledge that he had gained from the job. His crime, although not destructive of the devices, created a major headache for his former employer, as it had to deal with customers who found that the company's products were not working as they expected.

    b)    Characteristics of the Defendant

The defendant appears to be someone with employable skills who has supported himself over a period of years. This conviction may have an impact on his ability to obtain similar employment in the future. It also appears that he may have a problem with alcohol. The Presentence Report noted two arrests in the last 3 years for public drunkenness. (¶¶ 44-45) In his statements to the FBI agents in this case, he said that he had committed these crimes after he had been drinking. (Government's Change of Plea Memorandum, pp. 8-9).

2.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

a)    Seriousness of the Offense

In a world that is increasingly dependent upon computers that are connected to the Internet, the unauthorized access to computers is a continuing and serious problem. The wrongdoing can range from the stealing of information to the destruction of computer networks.

The defendant's crimes disrupted the ongoing operations of several municipal water authorities caused additional work for the defendant's former employer, who had to determine what was wrong, fix the problem, and then determine how it had happened. This group of victims is significant, because both Congress and the Sentencing Commission have singled out entities that provide critical infrastructure for enhanced protection. Section 225(b) of the Homeland Security Act Of 2002, PL 107–296, November 25, 2002, 116 Stat 2135, directed the Sentencing Commission to review and amend the Guidelines regarding violations of 18 U.S.C. § 1030 and to consider "(vii) whether the violation was intended to or had the effect of significantly interfering with or disrupting a critical infrastructure."[3] The

---

[3] Congress has provided a number of definitions of critical infrastructure that are similar to the one in the Sentencing Guidelines. For example:

> In this section, the term "critical infrastructure" means systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters.
> 42 U.S.C.A. § 5195c(e)

> The term "critical infrastructure" means systems and assets vital to national defense, national security, economic security, public health or safety including both regional and

(Footnote continued on following page)

Commission responded with the 2003 Amendment. The defendant did not attack a manufacturer of children's toys, or a seller of automobiles. He directed his attack at organizations that Congress and the Sentencing Commission have declared deserve special protection.

### b)   Promote Respect for the Law, and to Provide Just Punishment for the Offense

It is essential that the public understands that the law prohibits damage the computer networks of businesses and other institutions and that violations of these prohibitions are not considered trivial by the criminal justice system.

In terms of this defendant, the sentence should have a retributive impact on him. He needs to know that his conduct is not treated lightly and that there are consequences for the destruction he has caused (even if it is digital and not physical).

### 3.   The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant

Almost any business of substance today has some type of IT staff to keep its network and computers running. The number of IT employees today is vast. A sentence should have a general deterrent impact upon the entire class of IT employees to alert them that conduct such as that of this defendant can have serious consequences. A sentence should signal that courts do not look at damaging computer networks as merely youthful vandalism, but rather

---

national infrastructure. Critical infrastructure may be publicly or privately owned; examples of critical infrastructure include gas and oil production, storage, or delivery systems, water supply systems, telecommunications networks, electrical power generation or delivery systems, financing and banking systems, emergency services (including medical, police, fire, and rescue services), and transportation systems and services (including highways, mass transit, airlines, and airports). 18 U.S.C. § 2339D(c)(3)

see it as the maliciously destructive crime that it is. Focusing on specific deterrence for this defendant, he needs to carry the lesson of this case forward, so that anger, alcohol, and a desire for revenge do not overcome his judgment.

### 4. Provide the Defendant with Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

It is not clear whether the defendant will be able to continue to work in this field. Employers may be reluctant to entrust someone with their computer networks who has abused such trust in the past. Therefore, the defendant may need vocational training. In addition, there is a question whether he has a drinking problem. If he does not, he requires no further treatment. However, if he does, some alcohol counselling may be in order.

### 5. The Sentencing Guidelines

There are several reasons why the Court should give great weight to the Guidelines. First, the guidelines are much more comprehensive than any other Section 3553(a) factor. Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under *Booker* and § 3553(a)." *United States v. Shelton*, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in *United States v. Peach*, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. *See* 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the Guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C. Indeed, the *Booker* Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." *Booker*, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. *United States v. Wilson*, 350 F. Supp. 910, 914-25, *reaffirmed on denial of reconsideration*, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); *United States v. Wanning*, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); *Peach*, 356 F. Supp. 2d at 1020-22.

6.      The Need to Avoid Unwanted Sentencing Disparities

An additional reason to follow the Guidelines is to avoid unwarranted sentencing disparities among similarly situated defendants. The correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which *Booker* placed so much

emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[4]
Congress, the Court, and the guidelines all seek to minimize such disparity compared to "all
other similar sentences imposed nationwide." *United States v. White*, 406 F.3d 827, 837 (7th
Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance
about sentencing around the nation that is essential to accomplishing Congress' goal of
uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from
judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure
in all cases. The only standard currently available is the Sentencing Guidelines." *Wilson*, 350
F. Supp. 2d at 924; *Wanning*, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute
for the neutrality, coherence, and equality" that the guidelines provide). Thus, measuring
reasonableness in relation to the guideline range serves "to minimize the wide disparity in
sentencing across the country for similarly situated defendants that led to the enactment of
the Guidelines in the first place." *United States v. Paulus*, 331 F. Supp. 2d 727, 733 (E.D.
Wis. 2005).

Thus, the Third Circuit in *Cooper* stated that "'[t]he Guidelines remain an essential
tool in creating a fair and uniform sentencing regime across the country,' and provide a

---

[4] Every opinion in *Booker* acknowledged the express national policy, as articulated by Congress,
that sentences be uniform across the country to the extent possible. *See, e.g., Booker*, 543 U.S. at 253
(majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the
sentencing system in the direction of increased uniformity."), *id.* at 744 (same) ("Congress' basic statutory
goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to
base punishment upon, the real conduct that underlies the crime of conviction."); *id.* at 292 (dissenting
opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly
the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); *id.* at 303-
04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing
disparity.").

natural starting point for the determination of the appropriate level of punishment for criminal conduct." *Cooper*, 437 F.3d at 331, quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).[5]

The Court should also be aware of a similar case prosecuted in this district and its result. In *United States v. Lars Jepsen*, Crim. No. 15-328, the defendant had been a computer specialist at his employer's place of business. One of his assignments was maintaining the Voice over Internet Protocol (VOIP) telephone network. He was fired and two weeks later, using the log on credentials of another employee, he accessed the company's network and wiped out the VOIP system, shutting down the company's telephone network.

Jepsen's Offense Level was 12 and his Guideline Range was 10-16 months, which was in Zone C, as is this defendant's range. The Hon. Joseph F. Leeson, Jr., sentenced him to 5 months of incarceration, 5 months of home confinement as part of his term of 3-years supervised release. Copies of the Jepsen Indictment and Judgment and Commitment Order are attached.

---

[5] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. *Booker* directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." *United States v. Cropper*, 168 Fed. Appx. 503, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

Likewise, in imposing sentence, a district court need not focus on disparate sentences imposed on co-defendants in the same case, as opposed to sentences imposed nationwide on like offenders. *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

### 7.    The Need to Provide Restitution to Victims of the Offense

The parties have reached an agreement that the defendant will pay a total of $40,000 to his former employer, $10,000 of which shall be paid within a short period after the imposition of sentence and the balance of which shall be paid over the course of any term of imprisonment and supervised release. This amount is acceptable to the victim. The amount may be lower than the actual harm, but it reflects the value to the government of not having to have a hearing on this issue, and the value to the victim of having a significant portion of its losses paid promptly. It also reflects the reality of the defendant's ability to pay.

## IV.    CONCLUSION AND RECOMMENDATION

With a Guideline Range of 12-18 months, the defendant falls into Zone C. As a result, he is not eligible for probation. U.S.S.G. § 5B1.1, Application Note 2. The Guidelines require that a sentence be either one of imprisonment in the 12-18 month range, or the court can impose a term of imprisonment of at least 6 months, with a term of supervised release that requires a term of at least 6 months of either home or community confinement. U.S.S.G. § 5C1.1(d), (e), and Application Note 4. The government suggests that using the split sentence procedure would meet the requirements of the Sentencing Guidelines and the considerations outlined above under 18 U.S.C. § 3553 and would treat this defendant in a manner similar to way Lars Jepsen was treated. Because of the considerations regarding both

vocational training, the government recommends that the Court impose a term of supervised release[6] of 3 years.[7]

The government has examined the defendant's request for a downward variance. Nothing in that request sets the defendant off from most other first offenders. The Guidelines recognize his lack of a criminal record by setting up Criminal History Categories and the defendant falls into the lowest one. The Guidelines also take into account the amount of loss a defendant caused. Here the loss is small enough that the Guidelines give the defendant the benefit of being eligible for a split sentence. For these reasons, the government opposes any variance from the Guideline range advocated by the government.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


/s/ Michael L. Levy
MICHAEL L. LEVY
Assistant United States Attorney
Chief, Computer Crimes

---

[6] The offense is a Class C felony (18 U.S.C. § 3559(a)(3)) and therefore has a maximum term of supervised release of 3 years (18 U.S.C. § 3583(b)(2). Under the Sentencing Guidelines, the range of supervised release for a Class C felony is not less than one year, nor more than three years. § 5D1.2(a)(2).

[7] The Sentencing Guidelines have a recommended fine range of $3,000 to $30,000. §§ 5E1.2(c)(3), 5E1.2(h). It is more important to the government that he pay restitution to the victim than that he pay a fine.

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the government's Sentencing

Memorandum upon the following by filing it with the Court's Electronic Case Filing System:

Douglas Earl, Esquire
1015 Chestnut St
Suite 902
Philadelphia, PA 19107


/s/ Michael L. Levy
MICHAEL L. LEVY

June 7, 2017

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED: |
| LARS JEPSEN | : | VIOLATIONS: 18 U.S.C. § 1030(a)(5)(A) (knowingly causing the transmission of |
| | : | information or code and as a result of such conduct intentionally causing damage to a |
| | : | protected computer) – 1 count |
| | : | 18 U.S.C. § 1028(a)(7) (knowingly using the means of identification of another person with intent to commit a violation of federal law) – 1 count |

Notice of forfeiture

## INDICTMENT

**THE GRAND JURY CHARGES:**

1.        At all times material to this Indictment, Company A was in the business of buying and selling used cars.

2.        Company A conducted its business using a website, telephones, and physical locations in Pennsylvania and other mid-Atlantic states.

3.        Company A used a Voice Over Internet Protocol (VOIP) telephone and its computers, include those that ran the VOIP system were located in Media, Pennsylvania.

4.        Defendant LARS JEPSEN was employed by Company A as an Information Technology specialist, servicing computers and servers. In particularly, he had responsibility for the VOIP network.

5.      On or about June 23, 2014, defendant LARS JEPSEN performed service upon the computer of another employee of Company A. In order to do that, JEPSEN needed to obtain the employee's username and password. The same username and password that permitted access to the computer permitted access to the computer network of Company A

6.      On or about June 26, 2014, Company A terminated Defendant JEPSEN's employment.

7.      On or about July 3, 2014, defendant LARS JEPSEN drove from his home in Deptford, New Jersey to Allentown, Pennsylvania.

8.      On or about July 3, 2014, defendant LARS JEPSEN connected his laptop computer to an open Internet access point (an open WiFi connection) in Allentown, Pennsylvania, and using the username and password of the other Company A employee, accessed the computer network of Company A.

9.      On or about July 3, 2014, defendant LARS JEPSEN, having gained access to the network of Company A, accessed the VOIP telephone system and deleted data necessary to run that system. As a result, Company A did not have telephone service.

10.      On or about July 3, 2014, at Allentown, in the Eastern District of Pennsylvania and elsewhere, defendant

LARS JEPSEN

knowingly caused the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to the protected computers of Company A.

11.      As a result of this conduct, Company A suffered a loss on July 3, 2014 of more than $5,000 in the cost to respond to this offense, conduct a damage assessment, to restore

2

the system to its condition prior to the offense, as well as the loss of revenue and other consequential damages because of the interruption of telephone service.

In violation of Title 18, United States Code, Section 1030(a)(5)(A)

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES:**

1.     Paragraphs 1 through 9 of Count One are incorporated by reference.

2.     On or about July 3, 2014, at Allentown in the Eastern District of Pennsylvania,
defendant

## LARS JEPSEN

in and affecting interstate commerce, used, without lawful authority, a means of
identification of another person, that is the username and password of the other Company
A employee, with the intent to commit, and to aid or abet the commission, and in
connection with the commission of another offense, that is the sending of code to the
protected computers of Company A and thereby causing damage without authorization,
as charged in Count One, in violation of Title 18, United States Code, Section
1030(a)(5)(A).

In violation of Title 18, United States Code, Section 1028(a)(7).

4

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1028(a)(7) and 1030(a)(5)(A), as set forth in this indictment, defendant

### LARS JEPSEN

shall forfeit to the United States of America any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses, including, but not limited to:

One ASUS K52F laptop computer, Serial Number 15G29N005501

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18 United States Code, Sections 982(a)(2)(B), 1028(h) and 1030(i)(1)(A).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY

6

**EXHIBIT B**

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### EASTERN District of PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| LARS JEPSEN | ) | Case Number:  EDPA15CR00328-001 |
| | ) | USM Number:  72343-066 |
| | ) | |
| | ) | Bradley L. Henry, Esq. |
| | | Defendant's Attorney |

## THE DEFENDANT:

X  pleaded guilty to count(s)  1

☐  pleaded nolo contendere to count(s)
which was accepted by the court.

☐  was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1030(a)(5)(A) | Knowingly causing the transmission of information or code and as result of such conduct intentionally causing damage to a protected computer. | July 3, 2014 | 1 |

        The defendant is sentenced as provided in pages 2 through      6      of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count   2                        ☒ is   ☐ are  dismissed on the motion of the United States.

        It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

March 29, 2016
Date of Imposition of Judgment

Signature of Judge

Joseph F. Leeson, Jr.
Name and Title of Judge

Signed: March 31, 2016
Date:

AO 245B    (Rev. 09/11) Judgment in a Criminal Case

Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:        Lars Jepsen
CASE NUMBER:   15-328

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Five (5) months on count 1 of the Indictment.

X   The court makes the following recommendations to the Bureau of Prisons:
     Designation to a Federal Correctional Facility closest to Advance, North Carolina.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐ a.m.  ☐ p.m.   on _____.

    ☐  as notified by the United States Marshal.

☒  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒  before 2 p.m. on _____ May 16, 2016 _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B      (Rev. 09/11) Judgment in a Criminal Case

Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:    Lars Jepsen
CASE NUMBER:    15-328

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Three (3) years as to count 1 of the Indictment.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒   The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
        Sheet 3A — Supervised Release

Judgment—Page    4    of    6

DEFENDANT:     Lars Jepsen
CASE NUMBER:    15-328

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall be confined to his residence for a period of five (5) months commencing at the direction of the U.S. Probation Office. During this time, the defendant shall be required to be at this residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and at other such times as may be specifically authorized by the U.S. Probation Office. The defendant shall wear an electronic monitoring device and follow electronic monitoring procedures. The defendant shall permit the probation officer to access the residence at all times and maintain a telephone at the residence without any custom services or portable cordless equipment. The defendant shall comply with any other specific conditions of home confinement as the probation officer requires. The defendant shall pay the costs of electronic monitoring.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income.

The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with the payment schedule for any remaining fine obligation. The defendant shall not encumber or liquidate any interest in any asset unless it is in the direct service of the fine obligation or otherwise has the express approval of the Court.

The defendant must submit to drug testing on at least a quarterly basis and must regularly attend Alcoholics Anonymous or Narcotics Anonymous meetings.

The defendant shall participate in a mental health program for evaluation and shall follow any treatment recommendations issued in connection with the mental health evaluation, and abide by the rules of any such program until satisfactorily discharged.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

|  | Judgment — Page | 5 | of | 6 |
|---|---|---|---|---|

DEFENDANT:        Lars Jepsen
CASE NUMBER:      15-328

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 3,000.00 | $ 9,500.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Car Group Holdings<br>1400 North Providence Road<br>Media, PA 19063 | $9,500.00 | $9,500.00 | 100% |

| **TOTALS** | $ 9,500.00 | $ 9,500.00 |  |
|---|---|---|---|

☒ Restitution amount ordered pursuant to plea agreement  $  9,500.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the  ☒ fine  ☒ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
          Sheet 6 — Schedule of Payments

Judgment — Page __6__ of __6__

DEFENDANT:        Lars Jepsen
CASE NUMBER:      15-328

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☒  Lump sum payment of $ __100.00__ due immediately, balance due

       ☐  not later than _____ , or
       ☒  in accordance      ☒ C,   ☐ D,   ☐ E, or   ☒ F below; or

B   ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☒  Payment in equal __quarterly__ (e.g., weekly, monthly, quarterly) installments of $ __25.00__ over a period of
       __5 months__ (e.g., months or years), to commence __30 days__ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

E   ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
       imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☒  Special instructions regarding the payment of criminal monetary penalties:

       In the event the entire fine is not paid prior to the commencement of supervised release, the defendant shall satisfy the amount due in
       monthly installments of not less than $25 during defendant's period of supervised release, to commence 30 days after release from
       confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
    ASUS K52F laptop computer, Serial Number 15G29N005501

☐  Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
    (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.